**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| CRST EXPEDITED, INC., | No. 17-CV-26 CJW |
| Plaintiff, | **ORDER** |
| vs. | |
| JB HUNT TRANSPORT, INC., | |
| Defendant. | |

_____    _____

| | |
|---|---|
| CRST EXPEDITED, INC., | No. 17-CV-24 CJW |
| Plaintiff, | **ORDER** |
| vs. | |
| KNIGHT TRANSPORTATION, INC. | |
| Defendant. | |

_____

TABLE OF CONTENTS

I.   Background ……………………………………………………………………… 2

II.  Applicable Law …………………………………………………………………… 5

   A.  Motion for More Definite Statement ………………………………………… 5

   B.  Venue…………………………………………………………………………… 6

   C.  Joinder of Indispensable Parties……………………………………………… 7

III. Discussion…………………………………………………………………………… 9

   A.  Motion for More Definite Statement ………………………………………… 9

   B.  Motion to Dismiss for Improper Venue …………………………………… 11

   C.  Motion to Dismiss for Failure to Join Indispensable Parties ……………… 13

      1.  Whether the Drivers Must be Joined ……………………………………… 17

     a. Complete Relief in the Drivers' Absence ......................................... 17

     b. Impairing or Impeding the Drivers' Ability to Protect Their Interests ....... 19

     c. Whether Non-Joinder Would Leave Either Party Subject to Double, Multiple, or Otherwise Inconsistent Obligations ................................. 28

     d. Antitrust Argument ................................................................ 31

IV. Conclusion ...................................................................................... 33

This matter is before the Court on JB Hunt Transport's ("defendant") Motion for More Definite Statement Pursuant to FED. R. CIV. P. 12(e), Motion to Dismiss for Lack of Proper Venue Pursuant to FED. R. CIV. P. 12(b)(3) and Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(7).  (Doc. 37).[1]  CRST Expedited ("plaintiff") timely filed a resistance (Doc. 40), and defendant timely filed a reply (Doc. 42).  For the following reasons, defendants' motions are **denied**.

## I.    BACKGROUND

On March 20, 2017, plaintiff filed its complaint, (Doc. 2), and defendant filed a motion to dismiss for failure to state a claim, for a more definite statement, and to dismiss for lack of proper venue.  (Doc. 8).  The Court denied defendant's motion to dismiss for failure to state a claim, granted defendant's motion for a more definite statement, and found that it need not reach the issue of venue.  (Doc. 35).  With respect to defendant's argument in favor of dismissal for improper venue, the Court permitted plaintiff to amend

---

[1] The citations provided herein refer to *CRST Expedited, Inc. v. JB Hunt Transport, Inc.*, Case No. 17-CV-26-CJW.  Knight Transportation, Inc. filed a nearly identical motion and reply brief in *CRST Expedited, Inc. v. Knight Transportation, Inc.*, Case No. 17-CV-24-CJW; CRST Expedited, Inc., the plaintiff in both cases, likewise filed nearly identical resistances in each case.  The documents in *Knight* may be found at Docs. 34, 37, and 39, respectively.  Although the page numbers referenced in this Order may differ slightly from the relevant pages in the *Knight* documents, the arguments offered in support of each party's positions are the same.  Further, although this Order uses the word "defendant" in the singular, it should be understood that the term includes both JB Hunt Transport, Inc. and Knight Transportation, Inc.

its complaint and provided as follows: "If, upon review of plaintiff's amended complaint, defendant believes that the Northern District of Iowa is an improper venue, defendant may move to dismiss for lack of venue." (Doc. 35, at 15). Plaintiff subsequently amended its complaint. (Doc. 36). Defendant now challenges the amended complaint under Federal Rules of Civil Procedure 12(e), 12(b)(3), and 12(b)(7). The Court related the facts of this case in its prior Order and will presently engage in only an abbreviated recitation of the facts.[2]

Plaintiff and defendant are both trucking companies that hire individuals to serve as commercial drivers. These drivers must either hold or obtain commercial driver's licenses. Plaintiff alleges that it has established a driver training program wherein plaintiff incurs substantial expense in training individuals to become licensed truck drivers. (Doc. 36, at 2). In return, plaintiff alleges that the participants of the program agree to a ten-month employment term with plaintiff, during which time the participants may not provide truck driving services to any of plaintiff's competitors. (*Id.*, at 2-3). Plaintiff further alleges that defendant routinely poaches plaintiff's drivers so that defendant may obtain the benefits of plaintiff's driver training program without incurring any of the expenses involved with administering the program. (*Id.*, at 4-5). Specifically, plaintiff alleges that defendant entices plaintiff's drivers—who remain under contract with plaintiff—to breach their contracts and begin working for defendant instead. (*Id.*).

Based on these allegations, plaintiff brought four claims against defendant: (I) Intentional Interference with Prospective Economic Advantage; (II) Unjust Enrichment; (III) Intentional Interference with Contract; and (IV) Request for Permanent Injunctive Relief. (Doc. 36). Each of the first three claims is premised on defendant's alleged

_____

[2] The undersigned is presiding over one other companion case to the two instant cases: *CRST Expedited, Inc*. v. *Swift Transportation Co of Arizona, LLC*, Case No. 17-CV-25-CJW. Because of the similarities between the three cases, there is a degree of factual overlap between the Court's Orders.

wrongful inducement of plaintiff's drivers to cease working for plaintiff in favor of working for defendant. Plaintiff seeks injunctive relief that would enjoin defendant from:

> any further intentional and improper interference. Specifically, [defendant's] conduct undermines [plaintiff's] . . . business model, depriving [plaintiff] of the trained drivers necessary to reliably fill its trucks and, in turn, meet customer demand. Unless and until [defendant] is permanently enjoined, [plaintiff] will be unable to meet customer demand, which will almost certainly result in loss of customer good will, loss of customers, and irreparable harm.

(Doc. 36, at 9). Notably, plaintiff emphasizes that the nature of the injunction, should injunctive relief be granted, would be *forward-looking* and would have no effect on either the drivers who have already allegedly been poached, or on defendant, with respect to the drivers it has allegedly poached or will have allegedly poached prior to the granting of the injunction. (Doc. 40, at 12).

Defendant now moves for a more definite statement under Federal Rule of Civil Procedure 12(e) and, specifically, requests that plaintiff be required to identify each individual driver at issue. (Doc. 37-1, at 9-11). Defendant also argues that the Court should dismiss this case for improper venue under Rule 12(b)(3) and, in support thereof, defendant "incorporates its arguments from its first Motion to Dismiss and requests the Court dismiss the Amended Complaint." (*Id.*, at 11).

Finally, defendant moves to dismiss plaintiff's amended complaint under Federal Rule of Civil Procedure 12(b)(7), arguing that the drivers who were allegedly poached are indispensable parties who must be joined. (Doc. 37-1, at 11-26). This case is, however, based on this Court's diversity jurisdiction. Defendant asserts that "it is likely that at least some of [plaintiff's] Former Drivers are residents of Iowa." (*Id.*, at 19). Thus, joinder of any of the drivers who are Iowa citizens would destroy this Court's diversity jurisdiction. 28 U.S.C. § 1332. Joinder, defendant argues, is therefore not feasible, and this case should be dismissed. (Doc. 37-1, at 18-19). Defendant also alleges

that allowing this suit to continue could allow plaintiff to engage in Court-sanctioned violation of federal antitrust laws. (*Id.*, at 19-23). Defendant goes on to explain "[w]hen a case has the potential to validate the use of a contractual scheme to block free competition for labor and prevent an individual from exercising his or her chosen profession, it defies logic to claim that the individual is not a necessary party." (*Id.*, at 21; Doc. 42, at 4).

## II.     APPLICABLE LAW

### A.     Motion for More Definite Statement

Federal Rule of Civil Procedure 12(e) provides:

> A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

In granting a Rule 12(e) motion, a "court may insist that the plaintiff 'put forward specific, nonconclusory factual allegations' that establish [the claims alleged] in order to survive a prediscovery motion for dismissal or summary judgment." *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (quoting *Siegert v. Gilley*, 500 U.S. 226, 236 (1991) (Kennedy, J., concurring in judgment)). "A motion under Rule 12(e) is designed to strike at unintelligibility in a pleading rather than want of detail." *Cmty. Voiceline, L.L.C. v. Great Lakes Commc'n Corp.*, No. C 12-4048-MWB, 2013 WL 417749, at *4 (N.D. Iowa Feb. 1, 2013) (internal quotations and citations omitted). Further, "a motion for more definite statement is only proper when a party is unable to determine the issues he must meet." *Innovative Dig. Equip., Inc. v. Quantum Tech., Inc.*, 597 F. Supp. 983, 988 (N.D. Ohio 1984) (citing *Fischer & Porter Co. v. Sheffield Corp.*, 31 F.R.D. 534 (D. Del. 1962)). A motion for a more definite statement is not to be used as a substitute

for discovery. *Betancourt v. Marine Cargo Mgmt., Inc.*, 930 F. Supp. 606, 608 (S.D. Fla. 1996).

"Rule 12(e) motions are generally disfavored '[b]ecause of the liberal notice-pleading standard governing federal pleadings and the availability of extensive discovery[.]'" *Am. Cas. Co. of Reading v. Chang*, No. 14-00494-CV-W-BP, 2014 WL 12535303, at *2 (W.D. Mo. Nov. 26, 2014) (alterations in original) (quoting *Ransom v. VFS, Inc.*, 918 F. Supp.2d 888, 901 (D. Minn. 2013)). A "very limited" number of situations, however, may properly implicate Rule 12(e). *Rutter v. Carroll's Foods of Midwest, Inc.*, 50 F. Supp.2d 876, 887 (N.D. Iowa 1999) (quoting 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1377 (1990)). "'[T]he judge may in his discretion, in response to a motion for more definite statement under Federal Rule of Civil Procedure 12(e), require such detail as may be appropriate in the particular case, and may dismiss the complaint if his order is violated.'" *Rutter*, 50 F. Supp.2d at 887 (quoting *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996)).

### B. Venue

Section 1391(b) reads as follows:[3]

(b) Venue in General.—A civil action may be brought in—

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;

28 U.S.C. § 1391(b)(1)-(2). Plaintiff argues that defendant conceded personal jurisdiction by failing to argue that this Court lacked personal jurisdiction over defendant,

---

[3] The parties do not allege that venue may be proper under Section 1391(b)(3). Thus, the Court will not consider whether venue may be proper under this Section.

thereby waiving its right to challenge venue under 28 U.S.C. § 1391(b)(1).  (Doc. 40, at 8-9).

The United States Supreme Court has directly addressed the issue of venue:

> In most instances, the purpose of statutorily specific venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial.  . . . So long as the plain language of the statute does not open the severe type of "venue gap" that the amendment giving plaintiffs the right to proceed in the district where the claim arose was designed to close, there is no reason to read it more broadly on behalf of plaintiffs.

*Leroy v. Great W. United Corp.*, 443 U.S. 173, 184 (1979) (footnote omitted).  Further, the Supreme Court has held that "it is absolutely clear that Congress did not intend to provide for venue at the residence of the plaintiff or to give that party an unfettered choice among a host of different districts."  *Id.* at 185.

"When reviewing a Rule 12(b)(3) motion to dismiss for improper venue, the Court applies the same standard used for other motions to dismiss.  The Court must view all facts and resolve all conflicts in a manner most favorable to the plaintiff, and the defendant, as the movant, has the burden of establishing that the venue is improper."  *Safco Prods. Co. v. WelCom Prods., Inc.*, 730 F. Supp.2d 959, 963 (D. Minn. 2010) (internal citations omitted).  When considering a Rule 12(b)(3) motion, "the [C]ourt may consider matters outside the pleadings."  *Spanier v. Am. Pop Corn Co.*, No. C15-4071-MWB, 2016 WL 1465400, at *10 (N.D. Iowa Apr. 14, 2016).

### C.  *Joinder of Indispensable Parties*

Federal Rule of Civil Procedure 12(b)(7) permits a party to raise the defense of failure to join a party under Rule 19.  Rule 19 provides:

> **(a) Persons Required to Be Joined if Feasible.**
> **(1) *Required Party.*  **A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

         **(A)** in that person's absence, the court cannot accord complete relief among existing parties; or

     **(B)** that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

         **(i)** as a practical matter impair or impede the person's ability to protect the interest; or

         **(ii)** leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

     **(2)** *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

. . .

     **(b) When Joinder Is Not Feasible.** If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

     **(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

     **(2)** the extent to which any prejudice could be lessened or avoided by:

         **(A)** protective provisions in the judgment;

         **(B)** reshaping the relief; or

         **(C)** other measures;

     **(3)** whether a judgment rendered in the person's absence would be adequate; and

     **(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Where a court's jurisdiction is based purely on the diversity of the parties, joinder of a non-diverse defendant will destroy the court's jurisdiction. *See Bailey v. Bayer CropScience L.P.*, 563 F.3d 302, 307 (8th Cir. 2009). "If a potential defendant, whose joinder would destroy jurisdiction, is determined to be indispensable, the district court must . . . dismiss the action pursuant to Rule 19(b). Only when the potential defendant

is deemed dispensable may the district court deny joinder and retain jurisdiction over the action." *Id.* at 308. "'The determination of whether or not a person is an indispensable party is one which must be made on a case-by-case basis and is dependent upon the facts and circumstances of each case.'" *Id.* (quoting *Helzberg's Diamond Shops, Inc. v. Valley West Des Moines Shopping Ctr., Inc.*, 564 F.2d 816, 819 (8th Cir. 1977)).

## III.  DISCUSSION

### A.  Motion for More Definite Statement

Defendant moves this Court to order plaintiff to provide a more definite statement, based on defendant's allegation that "[plaintiff] has done nothing to illuminate [defendant] on the identities of the drivers it contends [defendant] has tortiously interfered with." (Doc. 37-1, at 10). Without this information, defendant argues, "[plaintiff's] vague and conclusory pleadings make it impossible for [defendant] to prepare a sufficient response and defend itself and, therefore, [defendant] requests that the Court order [plaintiff] to amend the Complaint to identify the specific contracts and drivers it claims that [defendant] has interfered with." (*Id.*, at 11).

Plaintiff has, however, provided the Court with its initial disclosures, which is dated as having been provided to defendant on July 13, 2017. (Doc. 41). Included with this document are two lists. One of the lists contains the names and last four digits of the social security numbers of those drivers who were recruited to work for defendant. (*Id.*, 41, at 5-10). The other list contains the same identifying information for those drivers who were verified with defendant but who were ultimately not hired by defendant. (*Id.*, at 11-20). Plaintiff's initial disclosures further provides that plaintiff and/or plaintiff's counsel are in possession of the driver contracts for those individuals who were recruited and ultimately hired by defendant, allegedly in violation of their contracts with plaintiff. (*Id.*, at 2).

Notably, defendant's reply brief does not contend that plaintiff's representations to the Court regarding its initial disclosures are erroneous or misleading. The Court will, therefore, assume that defendant was in fact provided with the information plaintiff asserts it has provided. Thus, although defendant was not provided with the contracts themselves on July 13, 2017, defendant was provided with the identities of the drivers at issue and with the location of the contracts at issue. Absent factors that have not yet been brought to the Court's attention, the Court sees no readily apparent reason as to why defendant cannot obtain the contracts through discovery. *See Betancourt*, 930 F. Supp. at 608 (explaining that a motion for more definite statement is not to be used as a substitute for discovery). Indeed, discovery has been ongoing and defendant has requested the contracts. (*See* Doc. 33 (setting October 17, 2018, as the discovery deadline)). Plaintiff responded to defendant's request by providing defendant with several ranges of Bates numbers of documents produced in discovery that purportedly identify the contracts at issue. (Doc. 40-1, at 1). Defendant does not contend that the Bates ranges are insufficient to identify the contracts at issue. The Court will therefore assume that the contracts have been adequately identified.

Given that plaintiff has been forthcoming with the location of the contracts, the Court is persuaded that any further relevant information can be obtained through discovery, if it has not already been obtained. Further, based on defendant's apparent knowledge of the drivers and contracts at issue, the Court is at a loss as to the more definite statement defendant would have this Court compel. Defendant has requested only that plaintiff identify the drivers and contracts at issue. Both have already been identified and the latter are presumably readily available for defendant to inspect and copy, if they, for some reason unknown to the Court, have not been provided. *See* FED. R. CIV. P. 26(a)(1)(A)(ii) & 34(a). Defendant therefore has some of the information defendant seeks—the identities of the drivers—and has access to the remainder—the

contracts at issue. As such, the Court finds that this is not one of the "very limited" situations that implicates Rule 12(e). *Rutter*, 50 F. Supp.2d at 887 (citation and internal quotation marks omitted). Therefore, defendant's motion for a more definite statement is **denied**.

### B.     *Motion to Dismiss for Improper Venue*

The entirety of defendant's argument in favor of dismissal[4] for improper venue is as follows:

> For the same reasons set forth in Defendant's initial Motion to Dismiss (Doc. 8), [defendant] also asserts a Motion to Transfer Venue. Because plaintiff's amended complaint still fails to identify the drivers at issue, [defendant] continues to not be in a sufficient position to argue whether the events giving rise to this claim occurred in this District or elsewhere. Accordingly, [defendant] incorporates its arguments from its first Motion to Dismiss and requests the Court dismiss the Amended Complaint under Rule 12(b)(3).

(Doc. 37-1, at 11). Defendants' first motion to dismiss argued, *inter alia*:

> The Complaint does not identify a single action that [defendant] took in Iowa that gives rise to any of [plaintiff's] claims. Therefore, the Court should conclude that no substantial part of the acts or omissions giving rise to [plaintiff's] claims took place in Iowa, and venue in this District is improper.
> . . .
> When a defendant seeks dismissal for improper venue under Rule 12(b)(3), the defendant usually must submit affidavits or other evidence defeating venue in the chosen forum. *See*[,] *e.g.*[,] *Freeman v. Fallin*, 254

---

[4] It is not clear whether defendant argues in favor of transferring this case to an alternative venue or whether defendant's Rule 12(b)(3) motion is limited to a motion to dismiss. The Court's analysis would be the same regardless of whether defendant's argument is in favor of transferring this case to a different venue as opposed to simply arguing in favor of dismissal. Likewise, the Court's analysis would be the same if defendant were arguing for dismissal or, in the alternative, for transference to another venue. Because the analysis remains unchanged under each scenario, the Court shall refer to defendant's Rule 12(b)(3) motion as either defendant's "Rule 12(b)(3) motion," or as defendant's "motion to dismiss for improper venue."

F. Supp.2d 52, 56 (D.D.C. 2003). However, when [plaintiff] wholly fails to identify the contracts at issue, it puts a defendant in the untenable position of trying to make [plaintiff's] case for [it]. [Defendant] is not in a sufficient position to fully argue whether the events giving rise to this claim occurred in this District or elsewhere[ ] because [plaintiff's] Complaint is woefully deficient.

(Doc. 8-2, at 18-19).

Defendant's initial argument in favor of dismissing this case for lack of venue rested upon defendant's lack of knowledge with respect to the relevant contracts. (*See* Doc. 8-2, at 19). Without this knowledge, defendant argued, defendant was unable to determine whether the Northern District of Iowa was a proper venue. Defendant has adopted this argument in the instant motion, and it would follow that upon learning the contracts or actions that allegedly gave rise to venue in this District, defendant would be able to ascertain whether this District is, in fact, a proper district to hear this case. It would appear that defendant has been in possession of a list of those drivers at issue since January 15, 2018, when plaintiff provided this information pursuant to defendant's request for production.[5] (*See* Doc. 40-1). Because defendant has—and has had for quite a lengthy period of time—the information necessary to determine whether venue is proper in this District, defendant's argument that it cannot determine whether venue is proper has no basis in fact.

The Court previously overlooked defendant's failure to bring evidence supporting its claim of improper venue because defendant lacked knowledge of the relevant drivers and actions at issue. Now that defendant has this information, however, the Court sees

_____

[5] The Court's prior Order was entered on March 15, 2018, which was after defendant appears to have come into possession of the information necessary to determine whether venue is proper in this District. (Doc. 35). Importantly, however, defendant's first motion was filed prior to the date on which plaintiff provided this information and, as a result, defendant did not have the benefit of this information when drafting its first motion. (*See* Doc. 8).

no explanation for defendant maintaining its claim that it cannot determine whether venue is proper. Indeed, defendant argues that it cannot intelligently argue against venue "[b]ecause Plaintiff's amended complaint still fails to identify the drivers at issue." (Doc. 37-1, at 11). The Court may, however, look beyond the complaint in deciding a Rule 12(b)(3) motion. *Spanier*, 2016 WL 1465400, at *10. As set forth above, plaintiff has brought evidence showing that it has disclosed the identities of the drivers at issue and has provided defendant with the contracts at issue. Defendant brings no other argument as to why it cannot determine whether venue is proper, and the Court is persuaded that defendant has the information necessary to enable it to argue against venue. Defendant has, however, declined to do so.

The Court disagrees that defendant was unable to argue the issue at the time defendant brought the instant motion and, as such, defendant's motion to dismiss for lack of venue is **denied**. Because it is not clear whether defendant intended to bring a motion to dismiss for lack of venue or a motion to transfer to an alternative venue, this ruling should be construed as **denying** each possible motion.[6]

### C. Motion to Dismiss for Failure to Join Indispensable Parties

In a motion to dismiss for failure to join an indispensable party, the movant bears the burden of establishing the existence of an indispensable party and that joinder of the party would destroy the Court's jurisdiction. *Spanier*, 2016 WL 1465400, at *12; *Lovell v. GEICO Gen. Ins. Co.*, Nos. 12-CV-00546(A)(M) & 12-CV-00781(A)(M), 2014 WL 12776125, at *2 (W.D.N.Y. July 11, 2014) ("'[t]he burden of proof rests on the party raising the defense . . . to show that the person who was not joined is needed for a just

---

[6] In *CRST Expedited, Inc. v. JB Hunt Transport, Inc.*, plaintiff offers one additional argument that it does not offer in *CRST Expedited, Inc. v. Knight Transportation, Inc.* Plaintiff argues that defendant Hunt's presence in Iowa offers an additional basis for venue. (Case No. 17-CV-26-CJW, Doc. 40, at 2 n.2). The Court notes this argument, but finds it unnecessary to address this issue because the venue issue has been otherwise resolved.

adjudication'" (alterations in original) (quoting *Am. Gen. Life and Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir. 2005))); *Indian Harbor Ins. Co. v. KB Lone Star, Inc.*, No. H-11-CV-1846, 2012 WL 1038658, at *5 (S.D. Tex. Mar. 27, 2012) ("[Defendant] fails to meet its burden of proof because it fails even to identify or name the purported indispensable parties, no less present any evidence in support of its motion. . . . [Defendant] also conclusorily asserts that several of the [indispensable parties] have headquarters in Connecticut and their joinder would defeat diversity. This failure makes it impossible for the Court to evaluate the standards of joinder of required parties under Rule 19."). The movant can meet its burden of showing that the absent party has an interest in the litigation that will be impeded by their absence by offering "affidavits of persons having knowledge of these interests as well as other relevant extra-pleading evidence." *Spanier*, 2016 WL 1465400, at *12 (citation and internal quotation marks omitted).

Here, defendant has offered no evidence in support of its contention that "it is likely that at least some of [plaintiff's] Former Drivers are residents of Iowa." (Doc. 37-1, at 19). Defendant turns to plaintiff's complaint to support this assertion and, specifically, argues that because plaintiff alleges that a "substantial part of the events or omissions giving rise to the claim occurred in Cedar Rapids, Linn County, Iowa," and because defendant conducts business in Iowa, some of the drivers at issue are likely Iowa citizens. (*Id.*). This may be true, but a driver may be recruited in a state other than the one in which he resides. The allegation that a substantial part of the relevant events or omissions occurred in Iowa does not, therefore, lend any support to defendant's assertion that some of the drivers at issue are Iowa citizens. Defendant has offered nothing else to support its allegation, despite having been provided with the identities of the drivers at issue. Defendant would, presumably, be able to use the drivers' identities to ascertain the residency of each driver. Defendant has, however, failed to do so.

Based on the large number of drivers at issue in this case, the Court would not be surprised to learn that at least one driver is, in fact, a citizen of Iowa. Defendant, however, relies on bare allegations and presumptions to support this position. This, of course, is not evidence. Where an affirmative burden of proof must be met before a motion may be granted, the Court cannot rely only on the statement of the movant in granting the motion. Defendant bears the burden of showing that at least one of the drivers at issue is a citizen of Iowa such that joinder would destroy this Court's jurisdiction. *See Spanier*, 2016 WL 1465400, at *12. Defendant has failed to meet that burden by failing to offer any degree of evidence in support of its motion. Therefore, defendant's motion is **denied**.

Although the Court has concluded that defendant has failed to meet its burden, the Court will continue with the Rule 19 analysis in the interest of giving full consideration to the issues brought before the Court. The Court will assume, *in arguendo*, that at least one of the drivers defendant argues must be joined is, in fact, an Iowa citizen. By making this assumption, the Court is able to proceed in its analysis to determine whether the drivers are necessary parties. Should the Court answer that question in the affirmative, the final inquiry shall become whether the case should proceed, "in equity and good conscience," without the drivers. FED. R. CIV. P. 19(b). *See Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000) ("First, the court must determine whether an absent party . . . qualifies as a 'necessary' party under Rule 19(a). . . . If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b).").

It is first worth noting that defendant argues that if the Court were to grant relief in the absence of the drivers, any such relief would be "hollow" and of no practical effect. In support, defendant turns to *Missouri River Historical Development, Inc. v. Penn National Gaming, Inc.*, 283 F.R.D. 501 (N.D. Iowa 2012). *Missouri River*,

however, is highly distinguishable and is not instructive in resolving the issues currently before the Court. In *Missouri River*, defendant sought to join a non-party that was a subsidiary company of defendant and on whose behalf defendant acted. 283 F.R.D. at 506. The *Missouri River* plaintiff sought to end the conduct altogether, not merely to have defendant stop acting on behalf of the non-party. Defendant's argument in favor of joinder was that complete relief could not be granted in the non-party's absence because even if defendant were enjoined from continuing its actions, the non-party could still act on its own behalf. As a result, even if the Court were to grant relief in the absence of the non-party, such relief would have no practical effect because the non-party could continue with the objectionable conduct. It was under these facts that the Court found that the non-party was an indispensable party and, consequently, dismissed the action for lack of jurisdiction. *Id.* at 511-12.

The instant case bears few similarities to *Missouri River*, aside from the type of motion brought. Where appropriate, the Court has considered the instant case in light of *Missouri River*. The factual differences between the two cases, however, are great enough that *Missouri River* is of little value in resolving the issues presently before the Court.

Federal Rule of Civil Procedure 19(a) addresses the threshold issue of whether a non-party must be joined in an action, and Rule 19(b) addresses the follow-up question of whether a case should be permitted to proceed in an otherwise necessary party's absence. Because Rule 19(b) becomes applicable in this case only if the drivers must be joined under Rule 19(a), the Court will first consider whether Rule 19(a) commands that the drivers be joined.

### 1.  Whether the Drivers Must be Joined

Federal Rule of Civil Procedure 19(a)(1) provides that non-parties who are subject to service of process must be joined if joinder will not deprive the Court of subject matter jurisdiction and if:

> (A) in that person's absence, the court cannot accord complete relief among the existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . (i) impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring . . . inconsistent obligations.

Defendant argues that each of the three subdivisions of Rule 19(a)(1) provides an independent basis for the joinder of the drivers.  The Court will consider each argument in turn.

### a.  Complete Relief in the Drivers' Absence

Defendant's argument as to the Court's ability to grant complete relief in the drivers' absence may be summed up as follows: "[E]ven if [plaintiff] obtains an injunction against [defendant,] which [does] not require the termination of employment of any Former Drivers, the injunction would not prevent the Former Drivers from going to work for . . . other transportation companies and continuing to avoid their alleged contractual obligations."  (Doc. 37-1, at 13 (footnote omitted)).  In other words, defendant argues that the Court's judgment would be of no effect if the Court enjoins defendant from recruiting the drivers but does not also enjoin the drivers from breaching their contracts.

Plaintiff's purpose in this suit is not, however, to prevent its drivers from breaching their contracts.  Rather, plaintiff's purpose is to prevent defendant from wrongfully enticing the drivers to breach their contracts.  (Doc. 40, at 12 ("Injunctive relief will target [defendant's] practices regarding future interference with current . . . drivers, not drivers who were already wrongfully retained.  If [defendant] were enjoined

from causing breach of employment agreements by drivers employed by [plaintiff], the lawsuit would result in complete relief.")). The Court's understanding of plaintiff's purpose in seeking injunctive relief is consistent with plaintiff's stated purpose in its complaint: "As a direct result of [defendant's intentional interference], [plaintiff] has suffered and will continue to suffer irreparable harm unless and until [defendant] is permanently enjoined from any further intentional and improper interference." (Doc. 36, at 9). A straightforward reading of plaintiff's complaint shows that plaintiff seeks *only* to prevent defendant's allegedly improper conduct; plaintiff is not requesting that the Court prevent the drivers from breaching their contracts with plaintiff.

Finally, defendant correctly points out that plaintiff seeks an injunction prohibiting "any further or continued interference," with plaintiff's contractual and economic interests. (Doc. 37-1, at 13). This could, as defendant states, "cover any Former Drivers currently working for [defendant] in alleged violation of their non-compete."[7] (*Id.*). Defendant has not, however, offered any statements or evidence purporting to show that any such drivers exist. In other words, this possibility certainly exists, but the Court has not been provided with any information that would support a finding that it does. The Court will not rule in the abstract that the suit cannot proceed without these unidentified drivers who may not even exist.

Whether the drivers ultimately breached their contracts is a distinct issue from whether defendant wrongfully enticed the drivers to do so. Drivers may breach their

---

[7] The Court notes that there is a contested issue of which drivers may be involved in this lawsuit. (*See* Doc. 37-1, at 10). Defendant contends that plaintiff will argue that even those drivers who were not presently working for plaintiff at the time they were recruited by defendant may be involved in this lawsuit. (*Id.*). Defendant does not explain the basis for this expectation, and the Court sees no indication of such an argument in the pleadings. Even if defendant's expectation is correct, however, this argument does not change the Court's analysis with respect to defendant's failure to bring evidence in support of its claims.

contracts with plaintiff without any wrongful conduct by defendant. Similarly, defendant may wrongfully attempt to entice drivers from plaintiff's employment without the drivers actually breaching their contracts with plaintiff. Further, plaintiff has not asked this Court to enjoin plaintiff's drivers from breaching their contracts. As the requested injunction targets only defendant's conduct, this Court may grant complete injunctive relief in the drivers' absence. The claim for injunctive relief does not, therefore, necessitate joinder of the drivers. The Court does not understand defendant to be arguing that the Court cannot afford complete monetary relief in the absence of the drivers and, thus, the Court will not address this issue.

### b. Impairing or Impeding the Drivers' Ability to Protect Their Interests

### i. Defendant's Ability to Represent Drivers' Interests

Defendant next argues that the drivers must be joined so that they are given an opportunity to argue against the enforceability of the contracts. Specifically, defendant states:

> In examining [plaintiff's] tort claims, the Court will be forced to analyze the underlying contractual dispute between the Former Drivers and [plaintiff]. To find that [defendant] interfered with [plaintiff's] Employment Contracts with its Former Drivers, it will have to first hold that the agreements are valid and enforceable. If the Court rule[s] that the Former Drivers' Employment Contracts with [plaintiff] are valid and enforceable, then the Court [will] necessarily adjudicate the rights of contracting parties to their detriment, without first providing them with an opportunity to present their defenses. The Former Drivers stand to lose their ability to work for [defendant] (and similar companies) depending on the Court's interpretation of the Employment Contracts due to the non-competition provision. Against this background, any claim that the Former Drivers have no interest in the subject matter of this litigation ignores the realities of the situation.

(Doc. 37-1, at 15 (citations omitted)).  Defendant further argues that the damages plaintiff seeks in this case overlap with those damages plaintiff may seek in a suit against the drivers at issue.  (*Id.*, at 17).

Plaintiff, in turn, argues that the drivers need not be joined because even if the drivers have a legitimate argument to avoid their contracts, the contracts were valid and enforceable at the time of defendant's alleged tortious interference.  (Doc. 40, at 12-13). Plaintiff further argues that "[defendant's] contention that tort damages will overlap with contract damages for which former . . . drivers are liable provides no basis to find that former drivers are necessary."  (*Id.*, at 14).  Plaintiff also asserts that the tort damages asserted against defendant in the instant litigation are distinct from any potential breach of contract damages that may exist against the drivers.  (*Id.*).

With respect to the instant motion, neither party has asserted which body of law governs this case.  The Court does not have enough information to engage in a conflict of laws analysis.  It is necessary, however, to apply *some* body of law to determine whether the drivers are necessary parties.  The Court will, therefore, assume, *in arguendo*, that Iowa law governs the claims at issue.[8]  Under Iowa law, the claim of tortious interference with prospective economic advantage requires, as an element, that "the plaintiff had a prospective contractual or business relationship."  *Gen. Elec. Capital Corp. v. Commercial Servs. Grp., Inc.*, 485 F. Supp.2d 1015, 1025 (N.D. Iowa 2007) (citation and internal quotation marks omitted).  The claim of intentional interference with contract requires the plaintiff to have "had a valid contractual relationship with a

---

[8] The Court previously applied Iowa law to this case for the same reasons.  *CRST Expedited, Inc. v. J.B. Hunt Transport, Inc.*, No. 17-CV-26-CJW, 2018 WL 1369918, at *6 (N.D. Iowa Mar. 15, 2018).  The Court again cautions that this assumption is for the purposes of considering the instant motion *only* and should not be viewed as a determination of which body of law applies. *Id.* at *6 n.4.

third party." *Id.* (citation and internal quotation marks omitted). Thus, the existence of a contract is a prerequisite to each of these claims.[9] The issue, however, is not whether the contracts, presently, are enforceable. Rather, the issue is whether the contracts were void at the time of defendant's alleged tortious interference or whether the contracts were merely *voidable*, as will be discussed, *infra*.[10] Further, an alleged interferor may adequately represent a non-joined contracting party's interests in the subject of a litigation if the interferor's interest is the same as the contracting party's interest. *Prof'l. Hockey Club Cent. Sports Club of the Army v. Detroit Red Wings, Inc.*, 787 F. Supp. 706, 713 (E.D. Mich. 1992). *See also CRST Expedited, Inc. v. TransAm Trucking, Inc.*, No. 16-CV-52-LTS, 2017 WL 9178611, at *10 (N.D. Iowa Oct. 25, 2017) ("A party's interests in the dispute will not be prejudiced, and the party is not indispensable, if he or she will be adequately represented by one of the parties already joined.").

Although defendant suggests that the contracts may have been invalid from their execution, defendant does not suggest that the *circumstances* surrounding the execution of each contract or the *form* of execution rendered the contracts invalid. (*See* Doc. 37-1, at 14-17). It would follow, then, that defendant's principle argument against the

---

[9] The claim of unjust enrichment has three elements: 1) defendant was enriched by the receipt of a benefit; 2) the enrichment was at the expense of the plaintiff; and 3) it is unjust to allow the defendant to retain the benefit under the circumstances. *State, Dept. of Human Servs. ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 155-56 (Iowa 2001). The claim of unjust enrichment does not require the existence of a contract, nor does the claim of unjust enrichment in these specific circumstances *necessarily* require the existence of a contract. Because defendant's arguments with respect to the drivers' abilities to represent their own interests concern only the drivers' contracts, it follows that this argument would be inapplicable to plaintiff's claim for unjust enrichment. The Court will, therefore, treat it as such.

[10] The Court recognizes that plaintiff alleges ongoing harm and, thus, defendant may still be engaging in allegedly tortious behavior. If so, the Court's analysis as to this issue must be applied prospectively. The question, then, will become whether, at the time of defendant's future alleged tortious behavior, the contracts are void versus voidable.

validity of the agreements is based on the terms of the contracts as opposed to the circumstances under which each driver entered into his or her contract. Even if the contracts were invalidly executed, however, defendant has failed to demonstrate an inability to argue against the enforceability of the agreements on behalf of the drivers.[11] Surely defendant is just as capable of making the legal arguments available to the drivers based on the terms of the contract, and defendant may seek any necessary and discoverable information from the drivers through discovery. The Court is at a loss as to how defendant would inadequately represent the drivers' interests. The Court agrees with defendant that defendant does not share an identical objective with the drivers. The interests of defendant and the drivers are, however, aligned for the time being, and defendant has not shown how the interests may diverge at some later point, rendering defendant incapable of asserting the drivers' interests while maintaining arguments in its own favor.

### ii.    *Void Versus Voidable*

The *Restatement (Second) of Contracts*, Section 766, Intentional Interference with Performance of Contract by Third Person, Comment f provides as follows:

> *Voidable contracts.* The word "contract" connotes a promise creating a duty recognized by law. The particular agreement must be in force and effect at the time of the breach that the actor has caused; and if for any reason it is entirely void, there is no liability for causing its breach. Furthermore, it must be applicable to the particular performance that the third person has been induced or caused not to discharge. *It is not, however,*

---

[11] Of note, defendant fails to recognize that even if the contracts were invalidly entered into, the circumstances surrounding the execution of the contracts may still render the contracts only voidable, as opposed to void. *See, e.g*, *Poole v. Poole*, 257 N.W. 305, 307 (Iowa 1934) (recognizing "the fundamental rule that fraud in the obtaining of a contract renders it voidable only and not void. It is void only at the election of the injured party and not otherwise."); *In re Marriage of Barker*, 2010 WL 2384862, No. 09-1028, at *1 n.2 (Iowa Ct. App. 2010) ("If the mistake is in the formation of the contract and is mutual, the mistake could render the contract voidable.").

*necessary that the contract be legally enforceable against the third person.*
*A promise may be a valid and subsisting contract even though it is voidable.*
The third person may have a defense against action on the contract that
would permit him to avoid it and escape liability on it if he sees fit to do
so. *Until he does, the contract is a valid and subsisting relation, with which*
*the actor is not permitted to interfere improperly.* Thus, by reason of the
statute of frauds, formal defects, lack of mutuality, infancy, unconscionable
provisions, conditions precedent to the obligation or even uncertainty of
particular terms, the third person may be in a position to *avoid* liability for
any breach. *The defendant actor is not, however, for that reason free to*
*interfere with performance of the contract before it is avoided.*

(emphasis added) (internal citations omitted). *Peterson v. First Nat'l Bank of Iowa*, 392
N.W.2d 158, 165-66 (Iowa Ct. App. 1986). *See also Stone's Pharmacy, Inc. v.*
*Pharmacy Accounting Mgmt., Inc.*, 875 F.2d 665, 668 (8th Cir. 1989). Further, the
Supreme Court of Iowa has held that "[i]n the case of a voidable contract, if neither party
seeks avoidance, the court cannot void the contract, and the contract remains valid."
*Nichols v. City of Evansdale*, 687 N.W.2d 562, 571 (Iowa 2004) (citing *First State Bank*
*v. Shirley Ag Serv., Inc.*, 417 N.W.2d 448, 452 (Iowa 1987)).

Whether the contracts are voidable, therefore, is a separate issue from whether the
contracts were valid at the time of the alleged wrongful interference. Defendant appears
to confuse the two concepts by arguing that should the drivers successfully argue that the
contracts are substantively unenforceable, defendant cannot face any liability for its
alleged interference. On the other hand, if any of the drivers—or plaintiff—successfully
avoided their contracts prior to defendant's alleged interference, defendant would not be
liable for any alleged interference with those contracts. The same would hold true moving
forward: should any drivers—or plaintiff—avoid their contracts prior to any future
improper interference by defendant, defendant would face no liability for that
interference. Whether a driver successfully avoided his or her contract prior to
defendant's alleged interference, however, is not a question for which the driver need be

joined.  The answer to this question may be sought through discovery without joinder of the relevant driver.

Defendant argues that the issue is not one of void versus voidable contracts with respect to the tortious interference with contract claim.  (Doc. 42, at 4-6).  Instead, defendant urges the Court to adopt a California Court of Appeals decision from 1996[12] that held that where a contract was voidable at the time of the alleged tortious interference, that interference was not committed at a time that there was an *enforceable* contract and, therefore, the plaintiff did not have a cause of action for tortious interference.  (*Id.*).  Thus, defendant concludes, if the contracts in this case were voidable at the time of the alleged interference, plaintiff would have no claim for tortious interference because the contracts would not have been enforceable.

This Court, of course, is not bound by a California state court.  Moreover, the Iowa Court of Appeals has held that a voidable contract may still be a valid contract for purposes of supporting a tortious interference with contract claim.  *Edward Vantine Studios, Inc. v. Fraternal Composite Serv., Inc.*, 373 N.W.2d 512, 514 (Iowa Ct. App. 1985).  This is consistent with Iowa Supreme Court and Eighth Circuit precedent.  The Court will, therefore, follow suit in differentiating between void and voidable contracts.  The Court notes, however, that the Court is presently acting under the assumption that

---

[12] The case defendant cites only addresses a situation wherein a non-plaintiff contracting party has a right to avoid a contract.  *See PMC, Inc. v. Saban Entm't, Inc.*, 52 Cal. Rptr.2d 877, 890-91 (Cal. Ct. App. 1996).  In this case, that would mean the drivers.  Arguments may arise, however, that a *driver* committed some breach of conduct.  Should these arguments be brought, the issue will become one of whether the breach voided the driver's contract entirely, or whether the breach merely rendered the contract voidable, at plaintiff's option.  *PMC* only contemplates the situation where a plaintiff in an action, such as this one, would have a mere expectancy based on the other contracting party's ability to avoid the contract at its option.  Here, however, should a driver be proven to have committed some breach that rendered his or her contract voidable at *plaintiff's* option, *PMC* would yield no guidance.  The case defendant turns to, therefore, only addresses one of the potentially relevant issues the Court may face.

Iowa law controls all contracts at issue. As stated above, this assumption has been made for the purposes of considering the motion now before the Court. Should the parties later contend that a choice of law analysis is necessary and that under the applicable law, certain contracts would not support a claim for tortious interference with contract based on their voidability, the Court may be called upon to consider whether such contentions are supported by law and fact. At this point, however, it is sufficient for the Court to conclude that defendant is capable of representing the drivers' interests.

Defendant further argues that the drivers must be joined because defendant may, at some point, choose to argue that the drivers breached their contracts prior to defendant's alleged interference. This would, defendant argues, relieve defendant of any liability it may face for the alleged interference. This line of thought leads defendant to assert that the drivers must be joined to argue that they did not breach their agreements because defendant, arguing that the drivers did breach, could not also represent the drivers' arguments that they did not breach. Defendant's argument is flawed for two reasons.

First, regardless of this Court's ruling with respect to the enforceability of the contracts and each party's potential breach or breaches, this ruling would have no bearing on the drivers in a future litigation. *See Irving v. Dormire*, 586 F.3d 645, 648-49 (8th Cir. 2009) (providing that a party must have been given an opportunity to be heard on an issue in a prior proceeding in order to be estopped from making the same argument in a subsequent proceeding).

Second, even if the Court were to find that a driver breached his or her contract with plaintiff prior to defendant's alleged interference, this would not change the Court's analysis. This is so because upon a driver's breach, that driver's contract could become *voidable* at plaintiff's option. *Hubbard v. Hartford Fire Ins. Co.*, 33 Iowa 325, 329 (1871) (in a breach of contract case, the Supreme Court of Iowa held that a contract

remained valid and binding, even following a party's breach, until such time as the wronged party committed some act intended to avoid the contract). Defendant's argument thus circles back to the void versus voidability issue. Plaintiff, of course, would have no claim against defendant if plaintiff avoided the contracts prior to defendant's alleged wrongful interference. Defendant may, therefore, wish to argue that certain drivers breached their contracts, which led plaintiff to avoid those contracts prior to defendant's alleged interference. The issue would then become one of plaintiff's conduct, not one of the drivers' conduct. Although the drivers may be able to provide information that would benefit defendant in making the argument that plaintiff's conduct amounted to avoidance, the drivers are not necessary for defendant to make that argument. Defendant may seek any necessary information through discovery and may formulate its own legal arguments as to why plaintiff's conduct amounted to avoidance. The Court finds that defendant's potential desire to argue that a driver breached his or her contract is an insufficient reason to require joinder of the drivers.

Here, defendant and the drivers share the same interest: to prove that the contracts are invalid.[13] To the extent the contracts may have been avoided prior to defendant's

---

[13] To the extent defendant asserts that the drivers would be precluded from later arguing against the enforceability of their contracts based on collateral estoppel, defendant is mistaken. *See Irving*, 586 F.3d at 648-49 (providing that a party must have been given an opportunity to be heard on an issue in a prior proceeding in order to be estopped from making the same argument in a subsequent proceeding). The Court also recognizes that the drivers may have an interest in arguing against the enforceability of their contracts *presently*, while defendant's interest will be limited to arguing that the contracts were invalid *at the time of defendant's alleged interference*. Because the collateral estoppel doctrine would not prevent the drivers from arguing against enforceability to a future court, the drivers will not be prejudiced by being unable to present these arguments to this Court. If a subsequent court turns to the proceedings in this case for guidance regarding the enforceability of the contracts, it will quickly become apparent to such a court that this Court only needed to make a limited holding as to whether the contracts were invalidated at the relevant time. As such, if this Court upholds the contracts as valid at the time of defendant's alleged interference, the drivers will not be prejudiced in a future proceeding because the drivers will be able to present new arguments to the future court. And, as stated

alleged improper interference, defendant is fully capable of arguing as such in the absence of the drivers. Likewise, to the extent the contracts may be facially invalid—and thus, potentially invalid at the time of defendant's alleged improper interference—defendant may make those arguments as well. Facial validity and voidability are distinct concepts and the former does not depend upon any factors unique to the driver-signatory. Thus, the drivers do not need to be joined in this action in order for the Court to consider the facial validity of the contracts. For the aforementioned reasons, declining to join the drivers at issue will not impair or impede their rights within the meaning of Rule 19(a)(1)(B)(i).

Finally, the Court recognizes that this conclusion appears to be at odds with the Court's conclusion in a companion case, *CRST Expedited, Inc. v. TransAm Trucking, Inc.* The reason for the discrepancy lies in the differences in the pleadings. In *TransAm*, CRST focused its discussion around whether TransAm met its burden of proof, whether an adverse finding could be used against the drivers in a subsequent proceeding, and whether the drivers actually breached their contracts. No. 16-CV-52-LTS, Doc. 53, at 10-13. Those arguments were unsuccessful as to the Rule 19(a)(1)(B)(i) issue. Plaintiff, however, appears to have used the Court's *TransAm* opinion in crafting its resistance to a similar motion to dismiss filed by defendant in a companion case, *CRST Expedited, Inc. v. Swift Transportation Co. of Arizona, LLC.* The Court subsequently entered an Order in *Swift* finding in plaintiff's favor and discussing the differences between void and voidability, turning to the *Restatement (Second) Contracts*, which has been cited by Iowa state courts, in support of the Court's decision. *CRST Expedited, Inc. v. Swift Transportation Co. of Ariz., LLC*, No. 17-CV-25-CJW, 2018 WL 2016274, at *8-10 (N.D. Iowa Apr. 30, 2018). Plaintiff, in the instant case, relied heavily upon *Swift* in

---

*infra*, defendant is fully capable of representing the drivers' interests with respect to the validity of the contracts at the time of defendant's alleged interference.

crafting its resistance to the motion currently at issue. In doing so, plaintiff again turned to the *Restatement (Second) Contracts* and the differences between void and voidability. As set forth above, these arguments are distinct from those arguments brought before the Court in *TransAm*. These differences in the basis for plaintiff's position are material and account for this Court's conclusion that the drivers need not be joined under Rule 19(a)(1)(B)(i).

        ***c.      Whether Non-Joinder Would Leave Either Party Subject to Double, Multiple, or Otherwise Inconsistent Obligations***

The argument defendant posits under the subheading "The Parties Have a Substantial Risk of Incurring Inconsistent Obligations If [sic] The [sic] Former Drivers Are [sic] not [sic] Joined" rests on the notion that each contract may be governed by the law of a different jurisdiction and, further, that the law of certain jurisdictions may require a court to inquire into the specific circumstances of each party to determine the enforceability of a contract or of certain provisions within a contract. Defendant's argument culminates in the following assertion:

> A court simply cannot conclude, with one sweeping ruling, and in the absence of the individuals who may have individualized defenses under state law, that many individual contracts are enforceable. However, this is exactly what the Court would have to do here for the claims to be decided in the manner [plaintiff] has presented them.

(Doc. 37-1, at 18).

The Court agrees that a single "sweeping ruling" may not be appropriate to determine the validity of the contracts in this case. That, however, is as far as the Court's agreement extends. The Court will not again delve into the intricacies of why the drivers need not be joined for defendant to assert those defenses that may be available to it. It is sufficient to note that the Court has already found that defendant is capable of arguing why the contracts may not have been enforceable at the time of the alleged wrongful

interference. The Court is unsure why defendant believes the Court would have to make "one sweeping ruling" determining the validity of the contracts. Throughout this litigation, the Court (and the parties) have recognized that a choice of law issue may exist that has yet to be decided. It is entirely possible that different bodies of law may govern different contracts. This does not mean, however, that the Court would have to issue a single ruling with respect to different contracts governed by different bodies of law. Although it could be an arduous process to decipher the body of law applicable to each contract and the validity of each contract under the relevant body of law, it would not be an impossible task. Therefore, the Court rejects defendant's argument that the drivers must be joined to avoid a "sweeping ruling."

Defendant also argues:

> [T]he monetary damages sought by [plaintiff] in this lawsuit overlap with the damages [it] may seek against the Former Drivers. While [plaintiff] may attempt to articulate a different theory of damages, [plaintiff] has already quantified its alleged damages for the breach of contracts at issue—the repayment terms outlined in the contracts. [Plaintiff] cannot claim there is no overlap, as their Rule 26(a) Disclosures identify a category of damages sought—"unpaid training advancements made to [plaintiff's] drivers recruited by [defendant]." Not only could failing to join the Former Drivers lead to inconsistent results, it [could well] lead to [plaintiff] recovering multiple times for the same purported injury.

(Doc. 37-1, at 17). This is an accurate recitation of plaintiff's initial computation of damages. The computation is, however, taken out of context. In computing "any category of damages claimed by" plaintiff, plaintiff provided as follows:

> Discovery in this matter has not yet begun and Plaintiff is not yet in a position to set forth a specific computation of damages. However, Plaintiff *anticipates* it will seek the following categories of damages in addition to permanent injunctive relief against Defendant:

Past and future damages resulting from Defendant's interference and unjust enrichment in an amount to be determined including, but not limited to, unpaid training advancements made to [plaintiff's] drivers recruited by [defendant], and lost revenue, loss of customer goodwill and damage to reputation as a result of driver shortages;

Punitive damages in an amount to be determined;

Attorney fees and expenses in an amount to be determined;

Costs in an amount to be determined; and

Interest in an amount to be determined.

Plaintiff reserves the right to supplement and/or amend these disclosures.

(Doc. 41, at 3 (emphasis added)).

In its initial disclosures, plaintiff explicitly stated that the damages computation provided was merely a calculation of those damages plaintiff's *anticipated* seeking. As such, plaintiff did not provide that it would *absolutely* seek such damages from defendant. Defendant argues only that the "unpaid training advancements" plaintiff may seek could result in duplicative recovery; defendant does not argue that any other theory of recovery would result in duplicative damages. The Court will, therefore, assume that the other enumerated bases for recovery could not result in duplicative recovery. From this assumption it follows that should plaintiff choose not to pursue damages based on "unpaid training advancements," plaintiff will not recover duplicative damages. Moreover, should plaintiff seek such damages in this case and in future cases against individual drivers, this Court or other courts may bar recovery of such damages on the very ground that they are duplicative. The Court therefore declines to find that the drivers must be joined to avoid a theoretical award of duplicative damages.

### d.     *Antitrust Argument*

Defendant next argues that the drivers should be joined because were the Court to grant the injunctive relief plaintiff seeks, such relief would constitute a per se restraint on trade, in violation of federal antitrust laws.  (Doc. 37-1, at 19-23).  Because the drivers would allegedly be "affected by the litigation to a respect greater than anyone," defendant argues that they must be joined to afford the drivers an opportunity "to make [their] case[s] regarding personal equities and circumstances that might make the contract[s] unenforceable."  (*Id.*).

The Court is unable to make the connection between a per se antitrust violation and the necessity of joining the drivers that defendant seems to have made.  To the best of the Court's understanding, defendant argues that the drivers must be joined so that the drivers have an opportunity to argue that the non-competition provision in the contracts is invalid as a per se violation of federal antitrust law.  This, however, is an entirely distinct concept from affording the drivers the opportunity "to make [their] case[s] regarding personal equities and circumstances that might make the contract[s] unenforceable."  (*Id.*).  The latter has been discussed, *supra*, and will not be discussed yet again.

Further, the very notion that the Court should consider the individual drivers' "personal equities and circumstances" is directly contrary to the idea of a per se antitrust violation.  The per se rule, by its definition, finds conduct guilty *per se*, without consideration of any potentially justifying or mitigating circumstances.  *Nat'l Soc'y Prof. Eng'rs v. United States*, 435 U.S. 679, 692 (1978) ("There are . . . agreements whose nature and necessary effect are so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality—they are 'illegal *per se*.'").  Thus, if defendant intends to advance a per se theory of illegality, joinder of the drivers would not be necessary to advance this theory.

Additionally, defendant's theory that the drivers must be joined is based on an incorrect understanding of the injunctive relief plaintiff seeks. As explained *supra*, plaintiff's request for injunctive relief does not seek to prevent the drivers from breaching their contracts, or even from breaching their contracts with plaintiff in favor of working for a competitor company, such as defendant. Rather, plaintiff's purpose is to halt the allegedly *wrongful recruitment* of its drivers. Defendant's argument is premised on the notion that plaintiff seeks to "prohibit[ ] [plaintiff's competitors] from employing the driver[s]." (Doc. 37-1, at 22). The premise is faulty to the point of defeating the argument.[14] As such, the Court declines to find that the antitrust considerations that may be in play necessitate joinder of the drivers.

---

[14] The Court finds it appropriate to briefly discuss an inconsistency in defendant's arguments. When arguing that complete relief could not be afforded in the absence of the drivers, defendant asserts that "the injunction [requested] would not prevent the Former Drivers from going to work for certain other transportation companies and continuing to avoid their alleged contractual obligations." (Doc. 37-1, at 13). When advancing the theory that granting injunctive relief would result in an antitrust violation, however, defendant asserts that "the end result would be a de facto injunction against the driver (or at least the driver's right to work for certain companies) because it prohibits [the companies] from employing the driver." (*Id.*, at 22). The Court finds this inconsistency noteworthy because, should either statement prove to be true, the opposing theory could be weakened substantially.

## IV.    CONCLUSION

For the reasons set forth above, the two motions at issue are **denied**.  Specifically, defendant JB Hunt's Motion for More Definite Statement Pursuant to FED. R. CIV. P. 12(e), Motion to Dismiss for Lack of Proper Venue Pursuant to FED. R. CIV. P. 12(b)(3) and Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(7) (Case No. 17-CV-26-CJW, Doc. 37), and defendant Knight Transportation's Motion for More Definite Statement Pursuant to FED. R. CIV. P. 12(e), Motion to Dismiss for Lack of Proper Venue Pursuant to FED. R. CIV. P. 12(b)(3) and Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(7) (Case No. 17-CV-24-CJW, Doc. 34), are **denied**.

**IT IS SO ORDERED** this 8th day of June, 2018.

_____
C.J. Williams
Chief United States Magistrate Judge
Northern District of Iowa